JUDGE LINDSAY
delivered the opinion oe the court.
The watches constituting the consideration for the notes sued on in this action were sold by Duncan, the agent for the appellant. There is no allegation in the pleadings of either one of the defendants, nor any proof whatever, conducing to show that Duncan was at the time of the sale engaged in the business of peddling without the license required by law. The legal presumption is that he was not. We must therefore presume that he had the legal right to retail “ goods, wares, and merchandise, not the product or manufacture of this state;” hence contracts made with him for the sale of such articles were not void, although the owner of the same was a resident merchant of a different state. The laws regulating peddling do not require that peddlers shall own the goods, wares, and merchandise sold by them. There is nothing in this conclusion in conflict with the opinion of this court in the case of Bull v. Harrigan, 17 B. Mon. 352. The facts of that case are not set out in the opinion, but we may safely assume that it was shown to the court that neither the owner of the goods sold nor his agents were licensed peddlers. The exact character of the contract by which Thompson became possessed of the goods of Reed can not be ascertained from the proof before this court. The amended answer of Reed affords the most satisfactory explanation given by either one of the contracting parties, and although this amendment is in conflict with his original answer, the statements therein contained are established with a reasonable degree of certainty by a preponderance of the evidence. Thompson claims that he purchased Reed’s entire stock of watches, jewelry, etc., and paid him for the same; but he fails to adduce any proof as to the time, place, manner, or amount of such payment. It is more reasonable to conclude that he became Reed’s partner. Upon this hypothesis we can account for the fact that the notes given for stock subsequently purchased were executed in the *457 name of Reed & Co., as shown by the testimony of the cashier of the bank at Lancaster, at which place said notes were paid; and for the further fact that Reed continued in the establishment until he went South, and returned to it at once upon coming back to the town of Lancaster. The debt of Reed to Ákin, which Thompson agreed to pay, together with some other small debts which he agreed to and afterward did pay, when added to the three notes owing by Reed to Spadone, the appellant, make up about the amount of eleven hundred dollars, one half of the value of the stock on hand at the time of the alleged purchase, as shown by the invoice taken a few days before. We think the facts proven not only establish the partnership, but that it was part of the contract between Reed and Thompson that the latter was to pay off and discharge the notes sued on in this action. Appellant then properly alleged in his petition that the appellee Thompson was indebted to Reed; and as this indebtedness was to be discharged by the payment of appellant’s notes, the court had the right, as Reed, who was a party to the action, made no objection thereto, to substitute Spadone to Reed’s rights under said contract, and to render a personal judgment in his favor against Thompson.
The statute of frauds can not be made available as a defense to this action. The promise of Thompson to pay the debt of Reed was not made to Reed’s creditor, but directly to Reed himself, and therefore can be enforced, although not in writing.
In our opinion the circuit court erred in dismissing the petition of appellant as to the appellee Thompson. Its judgment is therefore to that extent í’eversed, and the cause remanded with instructions to enter judgment against Thompson for the amount of the notes sued on.